## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re
LESTER DAN PIERCY, JR.
Case No. 3:18-bk-32261-SHB
DOLORES J. PIERCY
Case No. 3:18-bk-32260-SHB
JOSEPH SHANE PIERCY
Case No. 3:18-bk-32262-SHB

              Debtors

    M. DUSTIN LONG

          Plaintiff

                                        CONSOLIDATED CASES
          v.                            **Adv. Proc. No. 3:18-ap-3043-SHB**
                                        Adv. Proc. No. 3:18-ap-3044-SHB
LESTER DAN PIERCY, JR., et al.          Adv. Proc. No. 3:18-ap-3046-SHB

              Defendants

## M E M O R A N D U M

**APPEARANCES:**    SWANSON & COWAN, LLP
                    Mark A. Cowan, Esq.
                    717 West Main Street
                    Suite 100
                    Morristown, Tennessee 37814
                    Attorneys for Plaintiff

                    QUIST, FITZPATRICK & JARRARD, PLLC
                    Ryan E. Jarrard, Esq.
                    2121 First Tennessee Plaza
                    800 South Gay Street
                    Knoxville, Tennessee 37929
                    Attorneys for Defendants

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Because Plaintiff raised before the state court a claim based in fraud and the state court's decision did not include a factual finding of fraudulent conduct, the Court finds that Plaintiff is bound by issue preclusion so that summary judgment in favor of Defendants is proper.

## I. PROCEDURAL POSTURE

Plaintiff filed a Complaint in each of the foregoing adversary proceedings on October 22, 2018, asking the Court to determine that a state-court judgment in the amount of $151,670.87 entered against Defendants jointly and severally is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).  Defendants each filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] on November 21, 2018, arguing that Plaintiff's claim is barred by the doctrine of judicial estoppel; however, because Defendants offered documents outside the pleadings in support of the motions to dismiss, pursuant to Rule 12(d), the Court directed that the motions would be treated as if for summary judgment under Federal Rule of Civil Procedure 56,[2] and the parties were directed to supplement their arguments and provide statements of undisputed material facts as required by Rule 56(c). [Docs. 6, 7, 10.[3]]

Defendants filed their statement of undisputed material facts on March 5, 2019 [Doc. 13], supported by a certified copy of the Complaint that was filed by Plaintiff against Defendants in Grainger County Chancery Court on February 7, 2012 ("State Court Complaint") and the Amendment to Complaint filed on August 30, 2013 ("Amended State Court Complaint") [Doc. 13-1]; the transcript of the chancellor's opinion delivered on September 19, 2013 ("State Court

---

[1] Rule 12 is applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012.

[2] Rule 56 is applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

[3] Because they involve common questions of fact and law, the Court consolidated the three adversary proceedings under Federal Rule of Civil Procedure 42, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7042, with adversary proceeding 3:18-ap-3043-SHB designated as the lead case. [Doc. 9.]  All record citations herein are to the lead case.

Opinion") [Doc. 13-2]; the Affidavits of Lester Dan Piercy and Joseph Shane Piercy [Docs. 13-3, 13-4]; and a supplemental brief in support of their collective argument that the relief sought by Plaintiff is barred by the doctrine of judicial estoppel, which incorporated arguments raised in Defendants' briefs in support of the motions to dismiss [Doc. 14; *see also* Doc. 7]. In response, in addition to his original responses in opposition to the motions to dismiss [Doc. 8], Plaintiff timely filed a supplemental response and brief [Doc. 15], a response to the statement of undisputed material facts [Doc. 16], and his affidavit [Doc. 16-1].

Following an analysis of the summary judgment materials filed by both parties, the Court entered its Memorandum and Order on Motion for Summary Judgment on June 12, 2019 ("Memorandum & Order") [Doc. 17], advising that it was inclined to determine that res judicata applies in this case to preclude Plaintiff from raising any claim that was or should have been raised in the state court and directing the parties, pursuant to Rule 56(f), to file briefs setting forth their respective arguments, if any, against application of the doctrine of res judicata to the Complaint and entry of summary judgment in favor of Defendants. Plaintiff filed his brief on July 5, 2019 [Doc. 19], and Defendants filed their collective brief on July 15, 2019 [Doc. 20]. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

The resulting procedural posture, thus, is that the converted motions for summary judgment are ripe, with the record including the parties' arguments concerning res judicata, all pleadings of record in the adversary proceedings, and all attachments thereto. *See* Fed. R. Evid. 201(a) (applicable in bankruptcy cases and adversary proceedings pursuant to Fed. R. Evid. 1101(a), (b) and Fed. R. Bankr. P. 9017). Even though the Court thoroughly recited the facts of this case as well as the standard for summary judgment and the elements of § 523(a)(4) in the

Memorandum & Order entered on June 12, 2019, they are restated and expanded herein to

maintain an organized record.

## II. UNDISPUTED FACTS

The parties do not dispute the following facts, which are established by the record,

including the unopposed documentation provided.  On February 7, 2012, Plaintiff commenced

*Long v. Goins Hollow Quarry, LLC, et al*., No. 2012-CH-12, in the Grainger County Chancery

Court ("State Court Action"), which was brought in connection with a Contract executed by

Plaintiff and Defendants on April 27, 2011.  The Contract provides:

> This agreement provides compensation from the sale of DGA and shot rock which
> will be crushed and screened from the location of Grainger/Claiborne line along
> Highway 25E.  This material is being purchased for $2.67 per ton from Hinkle
> Contracting Company, LLC, by Assignment and Assumption and Transfer
> Agreement [("Assignment Agreement")[4]], which agreement has been signed by the
> parties, Dustin Long and Dan Piercy, Jr.
>
> The following percentages will apply to the profit from the sale of aforesaid DGA
> and shot rock:
>
> > Twenty-five percent (25%) for Dustin Long
> > Twenty-five percent (25%) for Dolores Piercy
> > Twenty-five percent (25%) for Shane Piercy
> > Twenty-five percent (25%) for Dan Piercy, Jr.
>
> All parties agree to these percentages for the profit made from the sale of these
> products[.]

[Doc. 13-1 at 11.]

In the State Court Complaint, Plaintiff makes the following averments relevant to the

instant motions:

> 4.  In April 2011, Dustin Long and Goins Hollow Quarry, LLC, entered into
> a contract with Hinkle Contracting Company, LLC, in which Hinkle assigned its
> rights in a stockpile of rock to Long and Goins Hollow in exchange for $2.67 for
> each ton of rock removed.

---

[4] The Assignment Agreement between Hinkle Contracting Company, LLC ("Hinkle"), Plaintiff, and Goins Hollow
Quarry, LLC (of which Defendants are members) is found in the record at Doc. 13-1 at 5-10.

5.  On April 27, 2011, Long and Goins Hollow Quarry, LLC, entered into a partnership agreement with each other, setting out how the profit from the rock would be divided after Hinkle Contracting was paid its $2.67 a ton.

6.  The partnership agreement provides that Long is to be paid 25%, and the three Goins Hollow (Piercy) defendants are to be paid a total of 75%.

7.  Even though Long was the one who secured the deal with Hinkle Contracting, Long agreed to give Goins Hollow defendants 75% of the profits because they agreed to provide and run all the equipment to weigh, crush, and process the rock as well as maintain the business records.  Moreover, Long was to haul all the rock, for which he could bill the customer directly to supplement his share of the profit.

8.  Long and Goins Hollow agreed to sell the processed rock for at least $9.75 a ton (some grades of rock were higher), meaning that Long was to receive at least $1.77 for each ton sold.

9.  According to the records supplied by Goins Hollow, the partnership sold 3,034.76 tons of rock in July 2011.  But Goins Hollow issued Long a royalty check for only $1,483.53.

10.  At a minimum, the division of profit should have [been $5,371.53 to Long and $16,114.58 to Goins Hollow].  Instead, Goins Hollow reimbursed itself for all its expenses, making the final payout [$1,483.53 to Long and $4,450.59 profit and $10,614.91 expenses to Goins Hollow.]

11.  Long also received a check for $1,015.78 for August 2011.  He has received nothing for September, October, November, December 2011, or January 2012.

12.  In addition to the defendants' diversion of funds from Long, they have refused to provide him an accounting or access to any business records.  With over 278,000 tons of visible rock at the site, Long has over $492,060 at stake in this venture – possibly[] much more, depending on the tonnage of available rock underground.

13.  Moreover, the defendants have refused to give Long access to the partnership scales to weigh rock that he has sold.  This lack of access to the scales has caused Hinkle Contracting to allege a breach of its underlying contract with the parties, because the rock sold by Long had to be weighed offsite in violation of Hinkle's contract.

14.  Long wants to protect the parties' relationship and contract with Hinkle Contracting, but it [sic] impossible to do so without the defendants' good-faith

4

cooperation.

[Doc. 13-1 at 1-3 (State Court Compl., ¶¶ 4-14) (footnotes and graphs omitted).]

In the initial State Court Complaint, Plaintiff sought the following, "[b]ased on the defendants' misconduct":  (1) "a judgment against [D]efendants, jointly and severally, in the amount of $492,060, less any amounts paid before trial, with prejudgment interest at 10%"; (2) a sworn accounting; (3) an injunction against Defendants' interference with Plaintiff's right to use the partnership equipment and to have full access to business records; (4) court costs and discretionary costs to be taxed against Defendants; (5) an attorney's fee award; and (6) any other appropriate relief. [*Id*. at 3-4.]  Plaintiff amended the State Court Complaint to seek an accounting and judicial supervision of dissolution and winding up of the partnership pursuant to Tennessee Code Annotated §§ 61-1-405(b) and 61-1-801(5) because

> the economic purpose of the partnership is likely to be unreasonably frustrated.
> The other partners have engaged in conduct relating to the partnership business
> that makes it not reasonably practicable to carry on the business in partnership
> with them.  And it is not otherwise reasonably practicable to carry on the
> partnership business in conformity with the partnership agreement.

[*Id*. at 14-15 (Am. State Court Compl. ¶¶ 15-17).]

Following trial before Chancellor Telford E. Forgety, Jr., he delivered a bench opinion (the "Bench Decision"). [Doc. 13-2.]  After first finding that the Contract was entered into between Plaintiff and Defendants individually, notwithstanding that the Contract stated that it was between Plaintiff and Goins Hollow Quarry, LLC [*id.* at 2-4], Chancellor Forgety defined the issue before him as follows:

> Now, the big, the really big thing here is whether the percentages for profit that
> were to be paid to the signatories to the contract, Dustin Long, Shane, Dan, and
> Delores Piercy, the percentages to the profit are to be applied to gross profit after
> payment of the one item.  That is to say, the royalty to Hinkle, or was it net profit
> after payment of the royalty to Hinkle and all the other costs of production.  That is
> the biggest issue in the case.

[*Id.* at 4:4-13.]  He continued his analysis of the parties' arguments concerning the Contract and

the primary issue, opining that:

> The evidence here is, as we all know[,] is absolutely contradictory.  Mr. Long says,
> look, we discussed it.  The deal was that they were to provide all of the machinery,
> the labor, the fuel, the insurance, et cetera, et cetera, et cetera, and they were to get
> seventy-five percent and me only twenty-five percent after payment of the royalty.
> On the other hand, the Piercys say, no, the deal was that we were to get seventy-
> five percent of the net profit after the payment of all expenses, not just the two
> sixty-seven [$2.67] in royalty to Hinkle, but all the costs of production, et cetera.
> So the evidence is absolutely contradictory.  Now, so how does the Court resolve
> that.   Well, I've got to look at what is the preponderance of the evidence,
> understanding that each side has an absolutely different story on it.

[*Id.* at 4:13 – 5:9.]

Chancellor Forgety reviewed evidence solely concerning the meaning of "profit" and

found that the Contract was to be construed in favor of Plaintiff and strictly against Defendants

because it was drafted by them. [*Id.* at 5:11-13.]  He then determined that the Contract should be

interpreted to mean that Plaintiff's share was twenty-five percent of the gross profit minus the

royalty to Hinkle such that Plaintiff was entitled to a judgment for the difference between what

Defendants had paid to Plaintiff and what Plaintiff should have received under the gross profit

calculation. [*See id.* at 5:16 – 10:9.]  Important here, Chancellor Forgety also stated that he found

Plaintiff's claim for lost anticipated profits speculative and he could not determine why the

partnership came to an end, saying, "[Q]uite frankly, I cannot hold the preponderance of the

evidence, two different views of why it came to an end, I cannot hold on the preponderance of

the evidence that the Piercys breached it." [*Id.* at 10:13-19.]  Finally, he refused to hold any party

in contempt, saying "[a]t this point in time, I don't think it would serve any purpose." [*Id.* at

13:17-21.]  Costs were assessed against Defendants. [*Id.* at 13:23-24.]

The Bench Decision was memorialized in the Judgment entered against Defendants on

October 7, 2013, in the amount of $151,670.87 ("Judgment"), which states in its entirety the

following:

> The Court conducted a bench trial in this action on September 19, 2013.  In accordance with Tennessee Rule of Civil Procedure 52.01, the Court's findings of fact and conclusions of law appear in a transcript of the ruling, which has been filed with the clerk and master, and is incorporated by reference.  Based on the pleadings, the testimony, the exhibits, the arguments of counsel, and the entire record, the Court finds that defendant Goins Hollow Quarry, LLC, should be dismissed, but that the plaintiff is entitled to judgment against the remaining defendants.

> Therefore, the Court DISMISSES the claims against Goins Hollow Quarry, LLC, and awards M. Dustin Long JUDGMENT against defendants Delores Piercy, Shane Piercy, and Lester Dan Piercy Jr., jointly and severally, for $151,670.87 (which has been reduced by the stipulated setoffs of $9,593.34 for the defendants' counterclaim and $2,499.31 for the two checks already paid to Long).

> Finally, the Court ORDERS that Long may seek contribution from the defendants if Hinkle Contracting Company, LLC, gets a judgment against him for any unpaid royalties.  The Court further holds that each individual party in this action is ultimately responsible for 25% of any reclamation amounts found to be owed to Hinkle Contracting in its Davidson County action, so any party may seek contribution from the others to the extent that he or she is forced to pay more than 25% of the total amount due.

> Costs are taxed to Delores Piercy, Shane Piercy, and Lester Dan Piercy Jr.

[Doc. 1-1.]

As required by this Court, Defendants filed their statement of undisputed material facts

[Doc. 13], to which Plaintiff responded [Doc. 16], as follows:

> 1.  The Plaintiff has brought an adversary action against all three defendants asking that his claims against them not be subject to discharge under 11 U.S.C. 523(a)(3). *See Doc. 1, Adv. Pro. No. 3:18-ap-3043-SHB; Doc. 1, Adv. Pro. No. 3:18-ap-3044-SHB; Doc. 1, Adv. Pro. No. 3:18-ap-3046-SHB.*

> **Response**:    Undisputed, except that the subsection is § 523(a)(4). [Complaint ¶ 11.]

> 2.  The basis for the Plaintiff's claim is a judgment that he obtained in Grainger County Chancery Court for $151,670.87. *Id., Exhibit A to each Complaint.*

**Response**: Undisputed.

3. The judgment references "findings of fact & conclusions of law" that were filed with the Clerk and Master of Grainger County, Tennessee. *Id.*

**Response**: Undisputed.

4. The "findings of fact & conclusions of law" from the Grainger County Clerk and Master are silent with respect to fraud or defalcation while acting in a fiduciary capacity. *See Attached Exhibit 2, P.2 L 11-19.*

**Response**: Disputed. While the opinion itself does not mention those words, the chancellor granted Long a judgment against the Piercys – jointly and severally – based on the fact that the Piercys diverted Long's share of the partnership profits to their own use. [Chancery-court Judgment at 1 (Doc. 1-1.).] After the first two months of operation, the Piercys didn't just pay Long the wrong amount, they didn't pay him anything. [Long Af. ¶ 4. (Ex. A.).] The diversion of funds is expressly mentioned in the complaint [Chancery-court Complaint ¶¶ 8-12. (Doc. 7-1.)] – it's what the case was about. The Piercys argued at trial they didn't owe Long anything, and the court specifically rejected that argument. [Long Af. ¶ 7. (Ex. A.).]

5. Based upon the "findings of fact & conclusions of law" the Plaintiff's judgment is not based around fraud or defalcation while acting in a fiduciary capacity. *See Attached Exhibit 2.*

**Response**: Disputed for the reasons mentioned in Response 4 above.

6. The Complaint and Amended Complaint filed in the state court action that establish the Plaintiff's claim do not make any allegations of fraud or defalcation while acting in a fiduciary capacity against the Defendants to this adversary action. *See Attached Exhibit 1.*

**Response**: Disputed. Paragraphs 8-12 of the chancery-court complaint specifically allege diversion of funds from a partnership, which would constitute defalcation while acting in a fiduciary capacity, as well as "embezzlement, or larceny" under 11 U.S.C. 523(a)(4). [Chancery-court Complaint ¶¶ 8-12. (Doc. 7-1.).]

7. The Defendants did not commit fraud or otherwise steal money from the Plaintiff. See *Attached Exhibits 3 & 4, Affidavits of Lester Dan Piercy & Joseph Shane Piercy. [Due to health reasons, Delores Piercy was unable to execute an affidavit prior to the Court's March 5, 2019 deadline.]*

**Response**: Disputed. The Piercys padlocked Long off of their partnership property, threatened to call the sheriff if he returned, and took Long's share of the

profits for themselves. [Long Af. ¶ 3 (Ex. A.).]

8.  Further the issues of fraud or theft were not raised in the underlying state court action that created the Plaintiff's claim. *Id.*

**Response**:  Disputed.  See Response 6 above.

[Doc. 13 ¶¶ 1-7; Doc. 16 ¶¶ 1-7) (footnotes omitted).]

### III. CONCLUSIONS OF LAW

Plaintiff asks the Court for a determination that the Judgment is nondischargeable under 11 U.S.C. § 523(a)(4) for debts obtained by larceny, embezzlement, or through fraud or defalcation while acting in a fiduciary capacity.  Specifically, Plaintiff alleges that "[b]y padlocking [Plaintiff] off the partnership property and wrongfully taking his share of the profits from the partnership, [Defendants'] debt is nondischargeable under Code § 523(a)(4)." [Doc. 1 ¶ 11.]  Because, as explained below, the Court finds that Plaintiff is collaterally estopped from re-litigating the issue of fraud arising from Defendants' conduct that led to the Judgment, which factual issue, based on Plaintiff's admission, was raised before and litigated by the state court such that it would be barred from re-litigation under Tennessee law, Plaintiff cannot satisfy the fraud element required to maintain any action under § 523(a)(4), and Defendants are entitled to summary judgment as a matter of law.

### A. Applicable Legal Standards

#### 1. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists. *See*

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Id.* at 248.

Defendants, the moving parties, bear the burden of proving, based on the record before

the Court, that they are entitled to judgment as a matter of law because there is no genuine

dispute concerning any material fact, such that the defenses alleged are factually unsupported.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The burden then shifts to Plaintiff to

prove that there are genuine disputes of material fact for trial; however, he may not rely solely on

allegations or denials contained in the pleadings because reliance on a "mere scintilla of evidence

in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc*., 437 F.3d

556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*.,475

U.S. 574, 586 (1986).  The facts and all resulting inferences are viewed in a light most favorable

to Plaintiff as non-movant, with the Court to decide whether "the evidence presents a sufficient

disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson*, 477 U.S. at 243.  Nevertheless, when "the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

## 2.  Nondischargeability under § 523(a)(4)

Nondischargeability under § 523(a)(4) requires a showing that the debt was incurred by

embezzlement, larceny, or fraud or defalcation while acting in a fiduciary capacity.  Within the

scope of § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to

whom such property has been entrusted or into whose hands it has lawfully come." *Brady v.

McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996).  Larceny is also the fraudulent

misappropriation of funds; however, it differs from embezzlement because possession of the property was never lawful. *See First Nat'l Bank v. Simerlein (In re Simerlein)*, 497 B.R. 525, 537 (Bankr. E.D. Tenn. 2013). Finally, fraud or defalcation while acting in a fiduciary capacity encompasses both embezzlement and larceny, as well as the failure to properly account for any funds, but may only be the basis for a nondischargeable debt if the plaintiff proves "(1) a pre-existing fiduciary relationship; (2) breach of that relationship; and (3) resulting loss." *Patel v. Shamrock Floorcovering Servs., Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009). This prong "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase[:] . . . one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013). Additionally, within the Sixth Circuit, a fiduciary relationship is found only in "those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997). Finally, "[e]xceptions to discharge under the Bankruptcy Code are to be strictly construed in favor of the debtor." *Goodmar, Inc. v. Hamilton (In re Hamilton)*, 306 B.R. 575, 582 (Bankr. W.D. Ky. 2004) (citing *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998)).

<u>3.  Issue Preclusion</u>

As the Court signaled in its Memorandum & Order, because Chancellor Forgety's Bench Decision and the subsequent Judgment do not reference that Defendants committed fraud of any kind against Plaintiff even though Plaintiff raised it in the State-Court Complaint, summary judgment in favor of Defendants appears to be appropriate based on res judicata (or collateral

estoppel, also known as issue preclusion[5]).  Res judicata, of which collateral estoppel is a

branch,[6] derives from the requirement that "judicial proceedings of any court of any state . . .

shall have the same full faith and credit in every court within the United States and its Territories

and Possessions as they have by law or usage in the courts of such State, Territory or Possession

from which they are taken." 28 U.S.C. § 1738.  In other words, "a federal court must give to a

state court judgment the same preclusive effect as would be given that judgment under the law of

the State in which the judgment was rendered." *Migra v. Warren City Sch. Bd. of Educ.*, 465

U.S. 75, 81 (1984); *see also Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S.

373, 380 (1985) ("[Section] 1738 embodies concerns of comity and federalism that allow the

States to determine, subject to the requirements of the statute and the Due Process Claus, the

preclusive effect of judgments in their own courts."); *Montana v. United States*, 440 U.S. 147,

153 (1979) ("[O]nce an issue is actually and necessarily determined by a court of competent

jurisdiction, that determination is conclusive in subsequent suits based on a different cause of

action involving a party to the prior litigation.").  Plaintiff correctly argues in his supplemental

brief [Doc. 19 at 2-3] that under the Supreme Court's holding in *Brown v. Felsen*, 442 U.S. 127,

136-37 (1979), because federal courts have exclusive jurisdiction over actions to determine

nondischargeability, *claim* preclusion does not apply in § 523(a)(2), (4), or (6) proceedings even

---

[5] The Sixth Circuit recently reiterated that "[w]hen [28 U.S.C.] § 1738 applies to a state court decision, both issue preclusion [collateral estoppel] and claim preclusion [res judicata] apply." *West v. Parker*, ___ F. App'x ___, 2019 WL 3564476, at *4 (6th Cir. Aug. 6, 2019) (alterations in original).  Although "[r]es judicata, at least in the Sixth Circuit, incorporates both issue and claim preclusion," *Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 566 n.11 (B.A.P. 6th Cir. 2019), "[t]he doctrine of collateral estoppel or issue preclusion is a narrower concept than claim preclusion: "Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Indirect Purchaser Class v. Andrews (In re Andrews)*, Adv. Proc. No. 18-3072-dof, 2019 WL 3361226, at *4 (Bankr. E.D. Mich. July 25, 2019).

[6] Curiously, Defendants incorrectly state in their brief that "the topic of collateral estoppel is outside the scope of the Court's Rule 56(f) notice." [Doc. 20 at 3.]  The Memorandum & Order includes a statement that res judicata, as interpreted in the Sixth Circuit, includes both claim and issue preclusion. [Doc. 17 at 13.]

though "the prior determination regarding the existence and amount of the debt will be entitled to

preclusive effect." *Bruinsma v. Wigger (In re Wigger)*, 595 B.R. 236, 249 (Bankr. W.D. Mich.

2018). Still, "absent an exception to § 1738, state law determines at least the issue-preclusive

effect of a prior state judgment in a subsequent action involving a claim within the exclusive

jurisdiction of the federal courts." *Marrese*, 470 U.S. at 381. That is, "collateral estoppel

precludes relitigation of *factual* issues that were actually and necessarily determined in the prior

action." *Trost v. Trost (In re Trost)*, 735 F. App'x 875, 879 (6th Cir. 2018) (citing *Trost v. Trost

(In re Trost)*, 510 B.R. 140, 152 (Bankr. W.D. Mich. 2014) (citing *Montana v. United States*, 440

U.S. at 153 )).

> As explained by the Sixth Circuit decades ago:

> The determination whether or not a certain debt is dischargeable is a legal
> conclusion based upon the facts in the case. The bankruptcy court has the exclusive
> jurisdiction to make that legal conclusion. It must apply the statute to the facts and
> decide to discharge or not. Therefore, res judicata does not apply to prevent
> litigation of every issue which might have been covered in the state court
> proceeding on the debt. However, that Congress intended the bankruptcy court to
> determine the final result [of] dischargeability or not does not require the
> bankruptcy court to redetermine all the underlying facts. As the Court held in
> *Brown [v. Felsen*, 442 U.S. 127 (1979)], where the facts necessary for a
> dischargeability determination were not necessary to the determination in the prior
> judgment, the parties should not be bound or else the parties would always have to
> anticipate future bankruptcy proceedings and the state courts would be deciding
> facts not necessary to the state proceedings but only relevant to a possible future
> bankruptcy proceeding. In effect, state courts would then be deciding issues
> directly concerning dischargeability, contrary to congressional intent. However,
> where the factual issues necessary for [a] dischargeability determination were also
> necessary to the state court determination, the parties would not have to anticipate
> the bankruptcy proceedings and the state courts would not be determining issues
> irrelevant to the state proceedings.

*Spilman v. Harley*, 656 F.2d 224, 227-28 (6th Cir. 1981).

Moreover, although the Supreme Court has held that claim preclusion does not apply to

dischargeability actions, it has expressly explained that issue preclusion – or collateral estoppel –

13

does apply in nondischargeability actions. *See Grogan v. Garner*, 498 U.S. 279, 284-85 (1991)

("If the preponderance standard also governs the question of nondischargeability, a bankruptcy

court could properly give collateral estoppel effect to those elements of the claim that are

identical to the elements required for discharge and which were actually litigated and determined

in the prior action.").

> [The collateral estoppel] doctrine holds that "[w]hen an issue of ultimate fact has
> been determined by a valid judgment, that issue cannot be again litigated between
> the same parties." Black's Law Dictionary 260 (6th ed. 1990). "The purposes of
> collateral estoppel are to shield litigants (and the judicial system) from the burden
> of re-litigating identical issues and to avoid inconsistent results."

*In re Earnest*, No. 11-36044, 2013 WL 795399, at *3 (Bankr. N.D. Ohio Mar. 1, 2013) (quoting

*Gilbert v. Ferry,* 413 F.3d 578, 580 (6th Cir. 2005)).

Collateral estoppel "'promotes finality, conserves judicial resources, and prevents

inconsistent decisions,' by barring 'the same parties or their privies from relitigating in a later

proceeding legal or factual issues that were actually raised and necessarily determined in an

earlier proceeding.'" *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (citations

omitted).

> Collateral estoppel is applied to encourage the parties to present their best
> arguments on the issues in question in the first instance and thereby save judicial
> time.  There is no reason to suppose that parties will not vigorously present their
> case on issues necessary to the state court proceeding or that the bankruptcy court
> will be any more fair or accurate than the state court in the determination of the
> facts.  Thus, there is no reason to allow relitigation of facts previously litigated
> which were necessary to the outcome of that prior litigation.  This Court holds that
> where all the requirements of collateral estoppel are met, collateral estoppel should
> preclude relitigation of factual issues.

*Spilman*, 656 F.2d at 228; *see also Booth v. Kirk*, 381 S.W.2d 312, 315 (Tenn. Ct. App. 1963)

("[M]aterial facts or questions which were in issue in a former action, and were there admitted or

judicially determined, are conclusively settled by a judgment rendered therein, and . . . such facts

14

or questions become res judicata and may not again be litigated in a subsequent action between the same parties." (citation omitted)).

The question that federal courts must ask is whether a state court would give preclusive effect to a judgment; if so, the federal court must follow suit. *See Migra*, 465 U.S. at 81.  Under Tennessee law, collateral estoppel includes five elements:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding [and was necessary to the judgment], (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009) (citations omitted); *see also Bowen*, 502 S.W.3d at 106 (stating that whether collateral estoppel applies is a question of law and, therefore, "summary judgment is an appropriate vehicle for resolving the same").

Of these elements, the Court states, without further explanation, that the third and fourth collateral-estoppel elements are not disputed:  the Judgment, which was entered on October 7, 2013, and not appealed, is final and the parties to both the State Court action and this adversary proceeding are the same and/or in privity.

**B.  Analysis**

<u>1. Embezzlement</u>

"Both the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence . . . , [and] the Plaintiff must prove fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." *WebMD v. Sedlacek (In re Sedlacek)*, 327 B.R. 872, 880-81 (Bankr. E.D. Tenn. 2005) (citations and quotation marks omitted); *see also Bombardier Capital, Inc. v. Tinkler (In re Tinkler)*, 311 B.R.

869, 876-77 (Bankr. D. Colo. 2004); *In re Hamilton*, 306 B.R. at 582.  Fraudulent intent can be

deduced by examining "the facts and circumstances surrounding the act." *Estate of Harris v.*

*Dawley (In re Dawley)*, 312 B.R. 765, 779 (Bankr. E.D. Pa. 2004) (citation omitted)); *see also*

*Powers v. Powers (In re Powers)*, 385 B.R. 173, 179-80 (Bankr. S.D. Ohio 2008) ("The fraud

element may also be satisfied by a showing of deceit . . . , but such intent can be inferred from

the relevant circumstances.").

     "The term 'fiduciary capacity' [in § 523(a)(4)] . . . does not modify the word[]

'embezzlement.'" *Cardwell v. Hester (In re Hester)*, 559 B.R. 472, 477 (Bankr. W.D. Ky. 2016).

That is, the lawful entrustment of property involved in embezzlement does not require the

existence of a fiduciary relationship. *See In re Sedlacek*, 327 B.R. at 880.  Also, "a mere lien or

security interest does not rise to the level of ownership sufficient to support a claim under §

523(a)(4)'s embezzlement provision." *Hulsing Hotels Tenn., Inc. v. Steffner (In re Steffner)*, 479

B.R. 746, 766 (Bankr. E.D. Tenn. 2012); *see also Kraus Anderson Capital, Inc. v. Bradley (In re*

*Bradley)*, 507 B.R. 192, 200 (B.A.P. 6th Cir. 2014) ("As owner of the collateral, the debtor

remained the owner of its proceeds, even though both the collateral and its proceeds were subject

to a security interest.  No person can embezzle from himself." (citation omitted)).

     Plaintiff's Complaint clearly avers that Defendants fraudulently withheld partnership

profits from him and alleges that the Judgment was awarded against Defendants for their

fraudulent conduct so that the Judgment is nondischargeable.  In addition, he adamantly states in

his response to Defendants' statement of undisputed facts, which asserts that the state court was

silent as to fraud or defalcation while acting in a fiduciary capacity, that the State-Court

Complaint alleged Defendants' fraudulent behavior by mentioning the diversion of funds.  [Doc.

16 ¶ 4.)  Indeed, Plaintiff asserts that that the diversion of funds was "what the case was about

[and that Defendants] argued at trial that they didn't owe Long anything, [but] the court specifically rejected that argument." [*Id.*]

Notwithstanding that the State-Court Complaint [Doc. 13-1 ¶ 12] supports Plaintiff's claim that Defendants engaged in "misconduct" and intentionally withheld funds that should have been paid to Plaintiff, there is no reference to fraud or a "diversion of funds" in either the Bench Decision or the Judgment itself. [Docs. 1-1; 13-2.]  Instead, Chancellor Forgety's analysis indicates a perception that Plaintiff's claim was merely for breach of contract and that "the biggest issue in the case" was the interpretation of the term "profits" in the Contract. [Doc. 13-2 at 4.]  Chancellor Forgety then construed the Contract in favor of Plaintiff and strictly against Defendants because Defendants drafted it [Doc. 13-2 at 5:11-13].  He accepted Plaintiff's definition of profit – that only the royalty owed to Hinkle under the Assignment Agreement, and not all other costs of the operation, were proper deductions from total sales receipts before division among the partners.  The dollar amount of the Judgment resulted from the court's re-calculation of the profits (under the adjudicated definition) divided among the four partners under the terms of the Contract. [*See id.* at 5:16 – 10:9.]

Critically for purposes of § 523(a)(4), Chancellor Forgety made no mention of "diversion of funds" or fraud and, in fact, stated that he was unsure "that either side had carried the preponderance of the evidence to prove that the other side was the one that breached the agreement." [*Id.* at 10:23 – 11:2.]  He also refused to hold Defendants in contempt. [*See id.* 13:17-21.]  Thus, notwithstanding that Plaintiff alleged fraudulent activity in the State-Court Complaint and the facts as presented here were tried before the State-Court, Chancellor Forgety's finding that Defendants breached the agreement was limited to their failure properly to calculate and pay Plaintiff's share from the partnership operations under the applicable definition

of profits.

### 2. Fraud or Defalcation While Acting in a Fiduciary Capacity

In the Memorandum & Order, citing binding Sixth Circuit law, the Court stated that because there was no express or technical trust, Plaintiff cannot sustain a theory of defalcation or fraud by a fiduciary.  Plaintiff appears to argue in his supplemental brief, relying on a treatise [Doc. 19 at 5], that this Court should disregard the Sixth Circuit's long-standing requirement that fraud or defalcation by a fiduciary requires an express or technical trust.  Plaintiff argues, instead, that "[t]he exclusion of partners from the operation of Code § 523(a)(4) by some courts ignores the fact that general partners do repose trust in one another, which rises to a fiduciary relationship not found in an ordinary commercial relationship." [*See id.* (quoting § 57.28 Partners as Fiduciaries, 3 Norton Bankr. L. & Prac. 3d § 57.28).]   This Court, however, must follow the Sixth Circuit's interpretation of what constitutes defalcation by a fiduciary under § 523(a)(4), and the Sixth Circuit has reiterated on many occasions that § 523(a)(4) requires an express or technical trust so that "the existence of a state law 'agent-principal relationship standing alone is insufficient to establish the type of fiduciary duty contemplated by § 523.'" *In re Wigger*, 595 B.R. at 257 (quoting *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005)).[7]

The requirements concerning § 523(a)(4) that bind this Court were succinctly summarized by the Bankruptcy Court for the Southern District of Ohio:

> In the Sixth Circuit, this section applies to "trustees who misappropriate funds held in trust, and not to those who failed to meet an obligation under a common law fiduciary relationship." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak),* 397 F.3d 386, 391

---

[7] A greater "trust" relationship is also required for fraudulent causes of action under state law. *See e.g., State v. Amanns*, 2 S.W.3d 241, 244 (Tenn. Ct. Crim. App. 1999) ("Simply because a contract exists between two parties does not mean that a fiduciary relationship has been created as was required for the prosecution under a theory of fraudulent breach of trust.  In the absence of any statutory authority permitting the same, a court may not impose a fiduciary relationship between parties to a contract when none exists.").

(6th Cir. 2005). To except a debt from discharge under § 523(a)(4)'s defalcation provision, the creditor must establish the existence of a fiduciary relationship arising from the presence of an express or technical trust. *Id.* at 391. *See also Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci),* 493 F.3d 635, 639–40 (6th Cir. 2007) ("The Sixth Circuit construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances. . . . [W]e [have] adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. Accordingly, the defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." (citations and internal quotation marks omitted)), *cert. denied,* 553 U.S. 1093, 128 S. Ct. 2903, 171 L. Ed. 2d 841 (2008).

*Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski)*, 393 B.R. 522, 532 (Bankr. S.D. Ohio 2008); *see also In re Patel*, 565 F.3d at 968 ("Establishing an 'express' trust is straightforward. The creditor must demonstrate: '(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary.'" (quoting *In re Blaszak*, 397 F.3d at 391-92)).  Because the undisputed facts of this case do not support a finding that there was an express or technical trust sufficient to prove that the parties were in the type of fiduciary relationship required to proceed under the defalcation prong of § 523(a)(4) as defined by the Sixth Circuit, Plaintiff's argument to the contrary fails.

### 3. Factual Issue Actually Litigated and Necessary to the Judgment

Concerning whether the issue of fraud was actually litigated and necessary to a final judgment, the Tennessee Supreme Court has held:

> The requirement that an issue be "actually litigated" does not imply that the issue must have been litigated in a full evidentiary and adversarial trial.  An issue need not be thoroughly litigated in order to be "actually litigated."  The requirement that an issue be "actually litigated" is generally satisfied if the issue was properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding.

*Mullins*, 294 S.W.3d at 536 (citations omitted).

Rule 9.02 of the Tennessee Rules of Civil Procedure requires that "the circumstances concerning fraud . . . shall be stated with particularity[, although m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally."  As further explained by the Advisory Commission Comments to Rule 9.02, "[t]he requirement in Rule 9.02 . . . is not intended to require lengthy recital of detail.  Rather, the Rule means only that general allegations of fraud . . . are insufficient; the pleader is required to particularize, but by the 'short and plain' statement required by Rule 8.01."

Plaintiff strongly urges that his State Court Complaint pleaded fraud.  He asserts the following in response to Defendants' statement of undisputed material facts:[8]

> 4.  The "findings of fact & conclusions of law" from the Grainger County Clerk and Master are silent with respect to fraud or defalcation while acting in a fiduciary capacity. *See Attached Exhibit 2, P.2 L 11-19.*

> **Response**:  Disputed.  While the opinion itself does not mention those words, the chancellor granted Long a judgment against the Piercys – jointly and severally – based on the fact that the Piercys diverted Long's share of the partnership profits to their own use. [Chancery-court Judgment at 1 (Doc. 1-1.).] After the first two months of operation, the Piercys didn't just pay Long the wrong amount, they didn't pay him anything. [Long Af. ¶ 4. (Ex. A.).]  **The diversion of funds is expressly mentioned in the complaint** [Chancery-court Complaint ¶¶ 8-12. (Doc. 7-1.)] **– it's what the case was about.  The Piercys argued at trial they didn't owe Long anything, and the court specifically rejected that argument.** [Long Af. ¶ 7. (Ex. A.).]

> 5.  Based upon the "findings of fact & conclusions of law" the **Plaintiff's judgment is not based around fraud or defalcation while acting in a fiduciary capacity**. *See Attached Exhibit 2.*

> **Response**:  **Disputed** for the reasons mentioned in Response 4 above.

> 6.  The Complaint and Amended Complaint filed in the state court action that establish the Plaintiff's claim do not make any allegations of fraud or defalcation while acting in a fiduciary capacity against the Defendants to this

---

[8] Even though the Court stated in the Memorandum & Order that judicial estoppel did not apply to Defendants' arguments in support of summary judgment, Plaintiff now would be judicially estopped from any attempts to argue that the State Court Action did not include allegations of fraud. *See New Hampshire v. Maine*, 532 U.S. 742 (2001); *White v. Wyndham Vacation Ownership, Inc*., 617 F.3d 472 (6th Cir. 2010).

adversary action. *See Attached Exhibit 1.*

**Response**: Disputed. Paragraphs 8-12 of the chancery-court complaint **specifically allege diversion of funds from a partnership, which would constitute defalcation while acting in a fiduciary capacity, as well as "embezzlement, or larceny" under 11 U.S.C. 523(a)(4)**. [Chancery-court Complaint ¶¶ 8-12. (Doc. 7-1.).]

7. The Defendants did not commit fraud or otherwise steal money from the Plaintiff. See *Attached Exhibits 3 & 4, Affidavits of Lester Dan Piercy & Joseph Shane Piercy. [Due to health reasons, Delores Piercy was unable to execute an affidavit prior to the Court's March 5, 2019 deadline.]*

**Response**: Disputed. The Piercys padlocked Long off of their partnership property, threatened to call the sheriff if he returned, and took Long's share of the profits for themselves. [Long Af. ¶ 3 (Ex. A.).]

8. Further **the issues of fraud or theft were not raised in the underlying state court action** that created the Plaintiff's claim. *Id.*

**Response**: **Disputed**. See Response 6 above.

[Doc. 13 ¶¶ 1-7; Doc. 16 ¶¶ 1-7) (emphasis added).] Additionally, in his Affidavit, Plaintiff

makes the following averments concerning the State Court Action:

2. I have read the allegations in my chancery-court complaint and the allegations in my adversary-proceeding complaints to block the dischargeability of my judgment against the three Piercy debtors. The facts in those documents are true.

3. Specifically, the Piercy debtors conspired and worked in concert to deny me my share of the partnership profits by padlocking me off our partnership property, threatening to call the sheriff if I returned, and taking my share of the profits for their own use.

4. For the first two months of operation, the Piercys sent me two woefully inadequate checks, purporting to be my share of the profits. After that, they never paid me another dime even though they continued to operate the business for many months.

5. When I complained to the sheriff's department, they took no action, so I had to get a lawyer and sue them in chancery court.

6. I won at trial, and the chancellor awarded me the full amount of the damages I requested (less agreed setoffs) for the time the Piercys continued to operate the business without me.

7. The Piercys tried to argue in chancery court that they didn't owe me anything, but the judge didn't believe them and ordered them to pay me my profits that they kept.

[Doc. 16-1 ¶¶ 2-7.]

The record, including Plaintiff's assertions, reflects that the parties had the opportunity to and did fully litigate the facts presented by the State Court Action. Chancellor Forgety rendered his Bench Decision, which was memorialized into the Judgment (which was drafted and submitted for entry by Plaintiff's counsel), and neither reflects a factual finding sufficient to support a claim under § 523(a)(4). Indeed, Chancellor Forgety's ruling includes a contrary factual finding: "[Q]uite frankly, I cannot hold the preponderance of the evidence, two different views of why it came to an end, I cannot hold on the preponderance of the evidence that the Piercys breached it." [Doc. 13-2 at 10:13-19.] Because the facts averred by Plaintiff in the State Court Action and this adversary proceeding and the subsequent allegations of Defendants' fraud are the same and the parties actually litigated the issue of fraud, the first and second elements of collateral estoppel are met.

### 4. Full and Fair Opportunity to Litigate the Factual Issue of Fraud

Finally, the collateral-estoppel requirement that the parties had a full and fair opportunity to litigate the factual issue in the prior proceeding differs from the "actually litigated" element in that it focuses on the parties themselves rather than the issues. *See Mullins*, 294 S.W.3d at 538. When as here, the plaintiff is the party to be precluded, "it is appropriate to consider (1) the procedural and substantive limitations placed on the plaintiff in the first proceeding, (2) the plaintiff's incentive to litigate the claim fully in the first proceeding, and (3) the parties' expectation of further litigation following the conclusion of the first proceeding." *Id.*, 294 S.W.3d at 538-39.

Plaintiff was not limited by the Chancery Court from alleging and arguing any facts to support his contention that Defendants "diverted" funds and otherwise acted fraudulently in connection with their contract. Additionally, he was fully incentivized to litigate his claims that Defendants acted fraudulently in their "diversion of funds," among other things. Finally, the facts were presented to Chancellor Forgety with the expectation that he would fully decide the outcome of the State Court Action. There would have been no expectation by the parties that any further litigation between them concerning these facts would arise and, in fact, the Judgment, which was prepared by Plaintiff's counsel and entered by Chancellor Forgety in October 2013, was not appealed or otherwise challenged. Based on the record, the actually-litigated requirement is also met.

## IV. CONCLUSION

Although the law is clear that dischargeability is not within the province of a state court, such rule is not determinative here. The state court was presented with the question of whether Defendants acted fraudulently by their "diversion of funds," and it clearly answered in the negative because Chancellor Forgety's entire decision is based on his perception that the dispute was merely a breach of contract created by a difference of opinion about the definition of "profits." Thus, under the doctrines of full faith and credit intertwined with res judicata – incorporating therein both claim and issue preclusion – Plaintiff is precluded from re-litigating the factual issue of fraud before this Court because he would be precluded from re-litigating it under Tennessee law. Accordingly, because Plaintiff cannot show fraud, even examining the record in a light most favorable to him, the Court finds that there is no genuine issue of material fact concerning the issue of fraud, without which Plaintiff cannot sustain a cause of action for embezzlement or larceny under § 523(a)(4). Further, no actual or constructive trust existed as

necessary to establish the third prong of a § 523(a)(4) claim – defalcation while acting in a

fiduciary capacity.  Accordingly, summary judgment will be granted in favor of Defendants.

An Order consistent with this Memorandum will be entered.


FILED:  August 20, 2019

BY THE COURT

*/s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE