UNITED STATES BANKRUPTCY COURT FOR THE EASTERN
DISTRICT OF TENNESSEE, NORTHERN DIVISION

|  |  |
|---|---|
| In re:<br><br>**Lester Dan Piercy Jr.**,<br>**Dolores J. Piercy**,<br>**Joseph Shane Piercy**,<br><br>Debtors. | No. 3:18-bk-32261-SHB<br>No. 3:18-bk-32260-SHB<br>No. 3:18-bk-32262-SHB |
| **M. Dustin Long**,<br><br>Plaintiff,<br><br>vs.<br><br>**Lester Dan Piercy Jr.** et al.,<br><br>Defendants. | Consolidated Cases<br><br>**Adv. Proc. No. 3:18-ap-03043-SHB**<br>Adv. Proc. No. 3:18-ap-03044-SHB<br>Adv. Proc. No. 3:18-ap-03046-SHB |

**Long's Trial Brief**

The Sixth Circuit remanded this case with very specific instructions: "Long's state-court judgment may therefore be declared nondischargeable as a debt for fraud or defalcation while the Piercys were acting in a fiduciary capacity under § 523(a)(4), provided that Long can produce evidence of their wrongful intent."[1]

**Mens Rea**

The facts of this case have been set out by three layers of courts now. But basically, Long had a partnership with the three Piercy family members. For the first two months, they paid him a

---

[1] *In re Piercy*, 21 F.4th 909, 928 (6th Cir. 2021).

small percentage of what they owed him, and then they stopped paying him at all when he complained. The Piercys admitted in all three of their depositions that they made a joint decision to intentionally stop paying Long. Instead they paid themselves more. Long never got another nickel. The chancery court ruled that the Piercys had no legal justification for doing so, and awarded Long a $151,670.87 judgment. The Piercys' joint actions constituted embezzlement and was an *intentional* act. As the Sixth Circuit said in our appeal: fraud involves "moral turpitude or *intentional* wrong,"[2] which is present in our case. But as that opinion points out, the mental state for defalcation by a fiduciary requires less of a showing.

Prior to 2013, the mens rea for defalcation by a fiduciary under 11 U.S.C. § 523(a)(4) was an unclear standard. But the U.S. Supreme Court recently clarified the standard to deny the discharge of a fiduciary—only gross recklessness in recognizing that the fiduciary might be doing something wrong is required: "We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."[3]

The bad faith showed by the Piercys is by itself enough to block their discharge. But even if the Court finds no bad faith in their not paying Long anything at all after the first two months, the Piercys were grossly reckless in believing that their theft was justified:

> Thus, *where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct,* the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty.[4]

Willful blindness to their fiduciary duty certainly describes the Piercys' behavior.

---

[2] *Id.* at 919 (emphasis in original).

[3] *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269, 133 S. Ct. 1754, 1757, 185 L. Ed. 2d 922 (2013).

[4] *Id.* at 569 U.S. 273–74, 133 S. Ct. 1759 (emphasis added).

The Supreme Court went on to say that defalcation by a fiduciary is easier to prove than fraud:

> "Fraud" typically requires a false statement or omission. See *id.*, § 19.7 (discussing fraud in the context of false pretenses). "Defalcation," as commonly used (hence as Congress might have understood it), can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity.[5]

The Supreme Court emphasized that defalcation can refer to nonfraudulent breaches of fiduciary duty:

> Nor are embezzlement, larceny, and fiduciary fraud simply special cases of defalcation as so defined. The statutory provision makes clear that the first two terms apply outside of the fiduciary context; and "defalcation," unlike "fraud," may be used to refer to *nonfraudulent* breaches of fiduciary duty.[6]

In our case, the Sixth Circuit has ruled that the Piercys were fiduciaries to Long. They padlocked him off the partnership property and kept his share of the partnership profits. They did not intend for him to get anything else, ever. It would be hard to imagine a stronger case for the denial of a discharge, for either embezzlement outright or for defalcation.

Interpreting the *Bullock* decision, the District Court for New Jersey reminds us that intentionally misappropriating money as a fiduciary (such as a partner, in the Sixth Circuit) is by itself enough to block discharge:

> Bullock decided for the first time whether § 523(a)(4) had a scienter requirement, and if so, what standard applied. In doing so, Bullock held that the definition of defalcation extends beyond intentional conduct to include conduct constituting a conscious disregard of a "substantial and unjustifiable risk" a duty would be breached. The gross deviation analysis was simply designed to insure that the conduct was sufficiently reckless and not approaching mere negligence, a lower mens rea the Supreme Court implicitly rejected when it also rejected the "objectively reckless" standard in the Eleventh Circuit. However, the Court's adoption of a willful blindness test, something short of intentional conduct, did not change the long standing law that the intentional breach of an express trust constitutes defalcation. Where a fiduciary, acting pursuant to an express trust, intentionally breaches a known duty, as Thayer did, that "per se"

---

[5] *Id.* at 569 U.S. 275, 133 S. Ct. 1760.

[6] *Id.* at 569 U.S. 275, 133 S. Ct. 1760, 185 (emphasis in original).

conduct constitutes defalcation at its highest level, even if such conduct does not also constitute fraud, theft, or other acts evidencing moral turpitude. The Supreme Court's decision in Bullock did not change that.[7]

In our case, even had the Piercys not admitted in their depositions that they made a conscious decision to keep Long's money, they were at least grossly reckless in doing so.

### Unclean Hands

The Piercys alleged fraud against Long in their chancery-court answer, but the chancellor rejected their arguments and awarded Long a $151,670.87 judgment against all of them. The Piercys now attempt to raise the same issue as "unclean hands" in this Court, but they don't get a second bite at that apple. (And even if unclean hands hadn't been argued before the chancellor, affirmative defenses are waived if not pleaded and raised at trial.) The chancellor found that the Piercys simply had no justifiable reason not to pay Long. The Sixth Circuit has held that that ruling is binding, save the issue of mens rea. Moreover the cases cited by the Piercys are simply inapposite. They have cited no case allowing a defense of unclean hands to defeat a denial of discharge under § 523(a)(4).

Respectfully submitted,

/s/ *Mark A. Cowan*
MARK A. COWAN, TN Bar No. 14278
Swanson & Cowan, LLP
717 West Main Street, Suite 100
Morristown, TN 37814-4523
mark@swansoncowan.com
(423) 586-9200
Attorney for Dustin Long

---

[7] *Fin. Cas. & Sur. Co Inc. v. Thayer*, 559 B.R. 102, 121 (D.N.J. 2016) at fn. 19.

## CERTIFICATE OF SERVICE

I certify that on November 4, 2022, a copy of this brief was served electronically on the parties listed on the Court's electronic filing receipt.

s/ *Mark A. Cowan*
Mark A. Cowan
Attorney for Dustin Long
